******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LEONARD TANNENBAUM *v.* STACEY TANNENBAUM
(AC 43482)

Elgo, Alexander and Devlin, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
denying the defendant's motion for contempt, claiming that the court
improperly modified the existing travel related custody order for the
parties' minor child. The existing order provided that the minor child
should be accompanied by a parent during air travel, but that if the
plaintiff was unable to accompany the child due to a health, work, or
family emergency or commitment, the child could travel by air with one
of two specified, nonparent adults. In her motion for contempt, the
defendant claimed that the plaintiff violated this order by failing to
accompany the child on five separate air travel trips. In its denial of
the plaintiff's motion, the court explained that the plaintiff had violated
the custody order but that the violations were not wilful, and it ordered
the plaintiff henceforth to accompany the child during air travel except
in the case of emergency, not based on his convenience. *Held* that the
trial court's order denying the defendant's motion for contempt did
not improperly modify the existing travel related custody order; the
contempt order did not alter the meaning or the substantive terms of
the existing order, as the court repeatedly emphasized in the existing
order that exceptions to the plaintiff's accompaniment of the child during
air travel were to be infrequent and only on an emergency and limited
basis, thus, the court was clarifying rather than modifying the cus-
tody order.

Argued May 18—officially released September 28, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Stamford-Norwalk, where the court, *Colin, J.*,
rendered judgment dissolving the marriage and granting
certain other relief in accordance with the parties' sepa-
ration agreement; thereafter, the court, *Colin, J.*,
granted the plaintiff's motion for modification of cus-
tody; subsequently, the court, *Truglia, J.*, denied the
defendant's motion for contempt, and the plaintiff
appealed to this court. *Affirmed.*

*Janet A. Battey*, with whom, on the brief, was *Olivia
M. Eucalitto*, for the appellant (plaintiff).

*Jon T. Kukucka*, with whom, on the brief, was
*Johanna S. Katz*, for the appellee (defendant).

*Opinion*

ALEXANDER, J. The plaintiff, Leonard Tannenbaum, appeals from the judgment of the trial court denying the motion for contempt filed by the defendant, Stacey Tannenbaum. On appeal, the plaintiff claims that the court improperly modified the existing travel related child custody order by requiring the plaintiff to accompany his minor child on any airline travel, except in the case of an emergency. Specifically, the plaintiff argues that (1) the court's order denying the defendant's motion for contempt constituted a modification because the existing travel related child custody order permitted the child's nanny or driver to accompany the child on air travel in lieu of the plaintiff not only in emergency circumstances, but also when the plaintiff had a health, work, or other family commitment, and (2) the alleged modification was improper because the court did not make findings that a substantial or material change had occurred, that the existing order was no longer in the child's best interests, or that the modification was in the child's best interests. We disagree that the court's order constituted a modification and, therefore, affirm the judgment of the trial court.

In its January 29, 2018 decision regarding a visitation order contained in the parties' parenting plan, the trial court, *Colin, J.*, found the following relevant facts and procedural history. "The parties were divorced on April 26, 2017. At that time, the parties submitted an agreement on all matters including a parenting plan, except that they reserved certain issues for a future determination, including this: whether the parenting plan should require that a parent must accompany the minor child on any airline travel.

"This reserved issue was thereafter heard by [the] court and a decision was entered on June 21, 2017. The court ruled as follows: (1) Unless the parties otherwise agree in writing, a parent shall accompany the minor child on any airline travel; (2) Unless the parties otherwise agree in writing, any driver for the minor child must be at least twenty-one years of age; (3) Either parent may seek a modification of these orders after they first engage in good faith discussions regarding these issues with their coparenting coordinator."[1]

The plaintiff filed a postjudgment amended motion for modification on December 11, 2017, requesting that the court modify the order "to permit the minor child to travel via airplane with the minor child's nanny, the driver, or any other adult with whom the child is comfortable as it is in the minor child's best interest." The parties, their counsel and the court-appointed guardian ad litem appeared in court on January 25, 2018, for an evidentiary hearing. After hearing testimony from numerous witnesses, the trial court granted the plaintiff's motion on January 29, 2018 (2018 order).

In the 2018 order, the court made the following findings of fact: "The [plaintiff], who resides primarily in Miami Beach, Florida (but who has many homes elsewhere, including in White Plains, New York), wants permission from the court to have his child's nanny and his driver/property manager fly with the child to and from the child's primary residence with his mother in Old Greenwich, Connecticut. The [plaintiff's] parenting time with his son is generally every other Friday at 5 p.m. until Sunday at 5 p.m. as well as holiday and vacation time. The court has reviewed the parties' final parenting plan in general, and paragraph 2.2 (regular parenting schedule) in particular, and infers that the [plaintiff's] regular parenting time will usually take place in the vicinity of White Plains, New York. Thus, the number of times that the child is likely to travel to and from Florida will be limited. This is a reasonable inference since a three year old child should not be required to commute between Connecticut and Florida on alternating weekends and the court is confident that these two fine and caring parents feel the same way.

"The [defendant] objects to the [plaintiff's] request due to the child's age and her concerns about the difficulties that sometimes arise with air travel, such as diversions, delays, etc. She believes that a parent should be present if these travel difficulties occur. . . . The [defendant's] concerns appear to be sincere and genuine. . . .

"The [plaintiff's] position appears to be reasonable. He has an ear problem that is worsened during some air travel. This ear problem, as well as his work and other family commitments, may sometimes impact his ability to fly from Florida to Connecticut and back in a short time period. He has missed some parenting time as a result. His nanny and driver are both well known to the child. The child seems to enjoy spending time with them. The nanny, in particular, presented a very thorough and impressive description of how she plans for airline travel with the child. She has flown with the child (in the presence of the plaintiff and others) on private planes but never on commercial flights. It is clear that she knows how to properly care for the parties' child and is able to handle the usual and customary travel related difficulties that sometimes arise. She appeared to be an extremely competent, experienced and caring childcare professional.

"The [guardian ad litem] supports the plaintiff's requests. The [guardian ad litem] had the opportunity to observe the child in the presence of the nanny and driver and described that interaction in very positive terms. . . .

"The court finds that it is in the best interests of this child for *his parent to accompany him on air travel, whenever possible, unless emergency circumstances*

*arise* that would cause the child to miss entirely his alternate weekend parenting time with the plaintiff. Since the parties generally reside so far from each other, it is important to this very young child for the [plaintiff's] parenting time to be regular and consistent. Thus, if work, family or health related circumstances arise such that the [plaintiff] is unable to accompany the child at all times via air travel, then the nanny and driver who testified in court are reasonable substitutes to step in, *on an emergency and limited basis only*, to accompany the child to/from Florida. *The court expects that these circumstances would be infrequent.*

"It cannot be reasonably disputed that flexibility and trust is an important part of cooperative coparenting, and that principle is particularly important in this case when the parents live far apart from each other. The [plaintiff's] choice of the individuals who can handle the air travel appears to be quite reasonable and the [defendant] should trust his ability to make that decision during his parenting time in the *limited circumstances* contemplated by this decision (health, work or other family related *emergency* or commitment)." (Emphasis added.)

The court then issued the following orders: "(1) The current orders shall remain in effect until the child is age three. (2) Upon the child attaining age three, in the event that the [plaintiff] is unable to travel by air with the child for his weekend or holiday parenting time due to a health/work/other family emergency or commitment, then he shall immediately so notify the [defendant] in writing and by phone of the circumstances and who will be traveling with the child except that the choices shall be limited to the nanny and driver who testified in court. As previously noted, this should not be a regular and consistent occurrence since the plaintiff generally spends his weekend parenting time in the northeast and travel to/from Florida with the child does not appear to be a regular occurrence. *It seems unlikely that these types of emergencies or commitments will frequently arise. To be clear, the first choice to travel by air with the child is a parent*—the [defendant's] position in this regard is well founded. In the event that the [plaintiff] is not able to be with the child during the air travel, then he shall instruct the nanny and/or driver (one of whom must accompany the child during air travel in the [plaintiff's] absence) to keep the [defendant] reasonably informed of the child's whereabouts at all times, including keeping her informed of any delays, diversions and upon arrival. It should be noted that the [defendant] is certainly free to accompany the child during air travel if she so desires." (Emphasis added.)

On June 8, 2018, the defendant filed a postjudgment motion for contempt claiming that the plaintiff had violated the 2018 order. On June 12, 2019, the defendant amended her motion for contempt, and claimed, inter

alia, that the plaintiff had violated the 2018 order on five separate occasions over the course of one year, three of which occurred over a period of three months. Specifically, the defendant claimed that the plaintiff failed to accompany the child on airline travel on May 28, 2018 (Memorial Day weekend), on June 17, 2018 (Father's Day weekend), on August 4, 2018, and on January 27 and March 31, 2019. The court, *Truglia, J.*, held an evidentiary hearing on the defendant's amended motion for contempt on June 28 and July 5, 2019.

After the hearing, on July 5, 2019, the court entered an order denying the defendant's motion for contempt (2019 order), which is the subject of this appeal. The order provides: "After an evidentiary hearing, the court does not find that the defendant has carried her burden of proof by clear and convincing evidence that the plaintiff has wilfully violated a clear order of the court.

"*The defendant has carried her burden of proof by clear and convincing evidence that the plaintiff has violated clear orders of this court regarding visitation.* The court's [2018 order] states unambiguously that the [the plaintiff] will accompany the child on airline flights, not the nanny or driver, unless he is unable 'due to a health/work/other family emergency.' There was no emergency and therefore no exception over the 2018 Memorial Day weekend, or the 2018 Father's Day weekend. Similarly, there was no emergency for the August 3 [through] August 10, 2018 parenting time or for the regularly scheduled January 25 [through January] 27, 2019 parenting time. The defendant correctly points out that the court's order clearly contemplates that the child flying without a parent should be a rare occurrence in emergency situations only. It is also clear that the plaintiff's time with the child is generally scheduled well in advance.

"The court cannot find, however, the plaintiff intentionally and wilfully violated the court's orders. The plaintiff appears to have acted on advice of his own counsel and the court-appointed guardian ad litem. The court cannot find, therefore, that the plaintiff intentionally violate[d] a clear court order without sufficient justification or excuse.

"The motion is denied.

"The court does not find the plaintiff in contempt.

"The plaintiff is ordered, however, to abide strictly with the court's orders henceforth requiring him to be the person who travels by air with the child except in the case of emergency, *not his convenience*." (Emphasis added.)

The plaintiff then filed a postjudgment motion to reargue, claiming that the 2019 order effectively modified the 2018 order. The defendant objected to the plaintiff's motion to reargue. The court held a hearing on the motion on September 23, 2019, and denied the

motion on the same day. This appeal followed.

On appeal, the plaintiff claims that the court's 2019 order, in which it denied the defendant's motion for contempt but ordered the plaintiff to be the person travelling with the child by air except "in cases of emergency, and not his convenience," constituted an improper modification, and not a clarification, of the 2018 order. Specifically, the plaintiff argues that the 2018 order permitted the child's nanny or driver to accompany the child on air travel in the plaintiff's stead not only in emergencies, but also whenever the plaintiff had a health, work, or other family commitment. The plaintiff further contends that the 2019 order constitutes a modification because it requires him to accompany his minor child on any airline travel, except in the case of emergency, eliminating the exception he was provided in the 2018 order for health, work, or other family commitments. We disagree.[2]

We begin our analysis by setting forth the relevant standard of review and applicable legal principles. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review." (Internal quotation marks omitted.) *Clark* v. *Clark*, 150 Conn. App. 551, 568, 91 A.3d 944 (2014). We are mindful, however, that the construction of an order or judgment of the court is a question of law over which our review is plenary. See *Perry* v. *Perry*, 130 Conn. App. 720, 724, 24 A.3d 1269 (2011) ("[b]ecause [t]he construction of [an order or] judgment is a question of law for the court . . . our review . . . is plenary" (internal quotation marks omitted)). "As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . *The interpretation of [an order or a] judgment may involve the circumstances surrounding [its] making* . . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Emphasis added; internal quotation marks omitted.) Id.

To resolve the plaintiff's claim, we must determine, as an initial matter, whether the 2019 order constituted a

modification or a clarification of the 2018 order. General Statutes § 46b-56 governs the modification of child custody orders. Subsection (b) of § 46b-56 provides in relevant part: "In making or modifying any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child . . . ." This court has recognized that, "[a]fter the final decree, [our Supreme] [C]ourt has limited the broad discretion given the trial court to modify custody orders under . . . § 46b-56 by requiring that modification of a custody award be based upon either a material change of circumstances which alters the court's finding of the best interests of the child . . . or a finding that the custody order sought to be modified was not based upon the best interests of the child." (Citations omitted.) *Hall* v. *Hall*, 186 Conn. 118, 122, 439 A.2d 447 (1982).

To determine if the court's 2019 order was a clarification of the 2018 order, rather than an alteration or modification, we begin by "examining the definitions of both alteration and clarification. An alteration is defined as [a] change of a thing from one form or state to another; making a thing different from what it was without destroying its identity. . . . An alteration is an act done upon the instrument by which its meaning or language is changed. If what is written upon or erased from the instrument has no tendency to produce this result, or to mislead any person, it is not an alteration. . . . Similarly, a modification is defined as [a] change; an alteration or amendment which introduces new elements into the details or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . *Conversely, to clarify something means to free it from confusion. . . . Thus, the purpose of a clarification is to take a prior statement, decision or order and make it easier to understand.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Perry* v. *Perry*, supra, 130 Conn. App. 725–26. On the basis of our thorough review of the record and the language and context of the orders, we conclude that the court clarified, rather than modified, the 2018 order.

First, we examine the terms of the 2018 order, which provides in relevant part: "Upon the child attaining age three, in the event that the [plaintiff] is unable to travel by air with the child for his weekend or holiday parenting time due to a health/work/other family emergency or commitment, then he shall immediately so notify the [defendant] in writing and by phone of the circumstances and who will be traveling with the child except that the choices shall be limited to the nanny and driver who testified in court. As previously noted, this should not be a regular and consistent occurrence since the plaintiff generally spends his weekend parenting time in the northeast and travel to/from Florida with the child does not appear to be a regular occurrence. It

seems unlikely that these types of emergencies or commitments will frequently arise." On appeal, the plaintiff claims that this language provided an exception not only for emergencies, but also for any health, work, or family commitments. We do not agree.

We acknowledge that, viewed in isolation, the terms in the 2018 order are ambiguous, specifically with respect to the meaning of the term "commitment" relative to the "health, work or other family emergency" language that precedes it. Our precedent nonetheless instructs that, when ambiguity exists in a postdissolution order, clarification is appropriate so long as there is no substantive change to the original order.[3] See *Almeida* v. *Almeida*, 190 Conn. App. 760, 767, 213 A.3d 28 (2019) ("[m]otions for clarification . . . may be appropriate where there is an ambiguous term in a judgment or decision . . . but, not where the movant's request would cause a substantive change in the existing decision" (internal quotation marks omitted)). As this court has explained, "[i]n order to determine whether the trial court properly clarified ambiguity in the judgment or impermissibly modified or altered the substantive terms of the judgment, we must first construe the trial court's judgment. . . . In construing a trial court's judgment, [t]he determinative factor is the intention of the court as gathered from *all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . .* Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Emphasis added; internal quotation marks omitted.) Id., 766.

Accordingly, this court is obligated to consider the intention of the court, as gathered from all parts of the 2018 order as well as the circumstances surrounding its enactment. Such review convinces us that the trial court intended to provide a very limited exception to the general rule that a parent was to accompany the minor child on any airline travel. In the 2018 order, the court repeatedly emphasized that the exception was available only on a limited basis in emergency circumstances. To construe the isolated language in question from the 2018 order to grant the plaintiff an exception for *any* work, health, or family commitment, as the plaintiff urges, simply cannot be reconciled with the plain language of the 2018 order as a whole, which expressly provides that the exception was available "on an emergency and limited basis only" and that such circumstances "would be infrequent." An exception that expanded the range of work, health, or family commitments to include those that are not emergency in nature would not be a "limited" exception; rather it would subsume the general requirement set forth in the 2018 order of parent supervised child air travel. As the court observed at the hearing on the plaintiff's motion

to reargue, the plaintiff "always has a commitment. . . . [H]e's a busy guy. . . . [The plaintiff's construction of the language in question] makes the language of Judge Colin's order completely meaningless." We therefore conclude that the 2018 order did not provide a broad exception for any work, health, or family commitment, but rather one for emergencies that may occur in limited circumstances.

Next, we turn to the terms of the 2019 order to determine what effect it had on the court's 2018 order. The plaintiff claims that the 2019 order constituted a modification of the 2018 order because it eliminated the exception for "situations involving a health, work, or other family commitment" by requiring the plaintiff to be "the person who travels by air with the child except in the case of emergency, not his convenience." We disagree. Having construed the 2018 order as providing the plaintiff with a very limited exception for emergency situations, we conclude that the 2019 order was not a modification. In the 2019 order, the intention of the court was to clarify the scope of the exception created in the 2018 order. This is especially evident given the testimony and exhibits presented at the 2019 hearing that led the court to iterate that the plaintiff must not act based on his "convenience" but must adhere strictly to the terms of the order. For example, the plaintiff testified, concerning airline travel on Memorial Day weekend of 2018, that "I did not want to fly back and forth on the same day and then have a meeting in the—I think it was in the morning on the Tuesday." When questioned about the airline travel on August 4, 2018, the plaintiff did not answer in detail and stated, "I'm sure I complied with the order. I'm sure I had a business meeting or a family issue, and I'm sure I notified [the defendant] of that . . . ." He responded similarly with regard to the January 27, 2019 airline travel, stating, "I'm sure on Monday I had work a work commitment or multiple work commitments." Further, with respect to the March 31, 2019 airline travel, the following colloquy took place:

"[The Defendant's Counsel]: With respect to spring break 2019, do you recall when you selected that spring break vacation?

"[The Plaintiff]: No.

"[The Defendant's Counsel]: Was it months in advance?

"[The Plaintiff]: Yes.

"[The Defendant's Counsel]: And [your child] was scheduled to return on a Sunday, wasn't he?

"[The Plaintiff]: It sounds right.

"[The Defendant's Counsel]: But you had a work commitment on Monday.

"[The Plaintiff]: Okay.

"[The Defendant's Counsel]: That's not Sunday. The transition day and the work commitment are two different dates. Do you agree with that?

"[The Plaintiff]: The transition and the work day are two different dates, yes.

"[The Defendant's Counsel]: Yes. They don't fall on the same day. They don't conflict."

The transcript of the 2019 hearing demonstrates that, despite the clear mandate of the court's 2018 order, the plaintiff did not understand the limited nature of the visitation order contained therein. It therefore was incumbent upon the court to provide him with a clarification of the terms of that order and explain that the terms of the 2018 order did not permit the plaintiff to act based on mere "convenience," particularly given the context of a contempt proceeding in which the court had found a violation of the 2018 order.

Accordingly, we conclude that the 2019 order was not a modification because it did not alter the meaning or substantive terms of the 2018 order. See *Almeida* v. *Almeida*, supra, 190 Conn. App. 766. Both orders, when construed in their entirety and considering all relevant circumstances surrounding their making, contemplate that the exception to parent supervised child air travel would apply only in the limited case of an emergency. The 2019 order made clear that the exception contained in the 2018 order was available to the plaintiff only "in the case of emergency, not his convenience" and did not broadly apply to all types of health, work, or other family commitments. In light of the foregoing, we reject the plaintiff's contention that the 2019 order constituted an improper modification of the 2018 visitation order.

The judgment is affirmed.

In this opinion ELGO, J., concurred.

[1] At the time of this appeal, there are numerous other motions pending with the trial court, including (1) two postjudgment motions to modify the parenting plan filed by the plaintiff, (2) the defendant's postjudgment motion for contempt, and (3) the plaintiff's objection to the defendant's postjudgment motion for contempt. A hearing is currently scheduled on these matters for April 19, 2022.

[2] Because we conclude that the 2019 order did not constitute an improper modification of the 2018 order, we do not address the plaintiff's additional claims.

[3] Indeed, we note that, although the court did not find that the plaintiff wilfully violated this order, it nevertheless found that the plaintiff did, in fact, violate the terms of the 2018 order. The plaintiff has not challenged the propriety of that determination on appeal. Moreover, the determination that the plaintiff violated the terms of the 2018 order was made following a full evidentiary hearing that required, in addition to evidence of the plaintiff's conduct, a determination of the proper meaning of the terms of the 2018 order by the court, which, in turn, required the court to clarify the parameters of the visitation order in question.